# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

OMAR SANTIAGO,

      Petitioner,

v.                                       Case No. 3:20-cv-844-TJC-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I.  Status

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Amended Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 7). He challenges a 2014 state court (Duval County, Florida) judgment of conviction for first degree murder and solicitation to commit a capital felony. He was sentenced to life in prison. Respondents filed an Amended Response (Doc. 19) with exhibits (Docs. 11-1 to 11-3, 19-2; Ex.). Petitioner filed a Reply (Doc. 20). This case is ripe for review.[1]

_____

[1] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."

## II.    <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then

---

<u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

> presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal

3

> courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365-66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (internal citations modified).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>, 501 U.S. at 747-48; <u>Wainwright v. Sykes</u>, 433 U.S. 72, 84-85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims

> if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 131 S. Ct. 1120, 1127-28 (2011); Beard v. Kindler, 130 S. Ct. 612, 617-18 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S. at 750.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012) (internal citations modified). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations modified).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)). Courts employ a two-part test when reviewing ineffective assistance of counsel claims. See Strickland, 466 U.S. at 687.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

Richter, 562 U.S. at 104 (internal citations modified).

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is afforded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at 105. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal citations modified). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

III.   **Analysis**

   **A. Ground One**

   Petitioner argues that the trial court erred by consolidating his two cases for trial. Doc. 7 at 5. Respondents contend that this claim is unexhausted because Petitioner failed "to fairly apprise the state courts that he was [] asserting a federal constitutional claim." Doc. 19 at 7. Alternatively, Respondents contend that the state court's adjudication of this claim is entitled to deference. See id. at 21-23.

   On February 15, 2012, Petitioner was charged with solicitation to commit a capital felony, and on April 4, 2013, he was charged in a separate case with first degree murder. Exs. A at 84-86; B at 232. The State filed a motion seeking to consolidate the two cases for trial, Ex. A at 100-03, and Petitioner, through counsel, filed a motion to strike the State's request, Ex. Q. The trial court held

a hearing on the State's motion, Ex. B at 308-22, after which it granted the State's request. Ex. A at 110-14. Following a jury trial, Petitioner was found guilty as charged on both counts. Ex. B at 274-76.

On direct appeal, Petitioner, through counsel, argued that the trial court erred in consolidating the two cases for trial. Ex. H. In doing so, Petitioner relied solely on state law. See id. The State responded, arguing that Petitioner presented "a complex argument that goes beyond that made at trial," and as such, only the argument made at trial had been preserved for appeal, which the State defended on the merits in terms of state law only. Ex. I at 9. The First District Court of Appeal per curiam affirmed Petitioner's convictions and sentences without issuing a written opinion. Ex. J.

As noted above, Petitioner's appellate brief on direct appeal addressed this issue in terms of state law only and not as a violation of his federal constitutional rights. Thus, he failed to allow the state courts the opportunity to resolve the federal nature of his claim. Therefore, this claim is unexhausted and procedurally barred. Petitioner fails to show cause to excuse the procedural default or resulting prejudice. Nor has Petitioner shown that a fundamental miscarriage of justice would result if the Court does not address the claim on the merits. Thus, the claim is due to be denied.

Alternatively, to the extent Petitioner exhausted the federal nature of this claim and the First DCA adjudicated the claim on the merits, the Court

defers to the state court's ruling. Upon thorough review of the record, this Court concludes that the state court's adjudication was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Ground One is due to be denied.

**B. Ground Two**

Petitioner asserts that his trial counsel was ineffective for failing to "further [his] demand for speedy trial." Doc. 7 at 7. Respondents contend this claim is unexhausted because, although Petitioner raised it in his Florida Rule of Criminal Procedure 3.850 motion, he failed to raise it during the appeal of the order denying his Rule 3.850 motion. Doc. 19 at 9. Respondents alternatively address the claim on the merits. Id. at 23-25.

Petitioner raised this claim in his Rule 3.850 motion. The postconviction court held an evidentiary hearing on other claims in the motion. The court then summarily denied this claim, finding as follows:

> In Ground One, Defendant alleges counsel was ineffective for not pursuing Defendant's right to speedy trial under Florida Rule of Criminal Procedure 3.191. Specifically, Defendant complains that counsel was deficient for not being ready for trial sooner. Defendant claims prejudice because the State would not have been able to bring additional charges against Defendant, nor would the State have

won at trial, had counsel not waived Defendant's right to a speedy trial.

When alleging ineffective assistance of counsel based upon "a failure to assert a movant's speedy trial rights under 3.191," a defendant must show that counsel's decision not to pursue a speedy trial was unreasonable. Remak v. State, 142 So. 3d 3 (Fla. 2d DCA 2014). Such claims should be denied absent a reasonable probability that the ultimate result would have been different had the State been forced to proceed to trial during the recapture period. See Hammond v. State, 34 So. 3d 58, 61 (Fla. 4th DCA 2010).

This Court conducted a Nelson[] inquiry on September 19, 2011. (Ex. D.) At this hearing, counsel testified that he was attempting to take depositions, but it was difficult because "a lot of the witnesses have been scattered throughout the country." (Ex. D at 5.) Counsel did not believe it would be in Defendant's best interest to go to trial before deposing these witnesses. (Ex. D at 5.) This Court held that counsel was not ineffective. (Ex. D at 6.) This Court finds no basis for disturbing that ruling. See Ford v. State, 955 So. 2d 550, 554-556 (Fla. 2007).

Weeks after the Nelson inquiry, Defendant solicited a cellmate to arrange the murder of the State's key witness. (Ex. E at 565-608.) The cellmate reported the conversation to authorities, and undercover detectives met with Defendant to discuss payment and how the murder should take place. (Ex. E at 594-608, 654-60.) After this conversation, the State charged Defendant with Solicitation to Commit Murder. (Ex. F.) Upon the State's motion, this Court consolidated the solicitation charge with the murder charge. (Ex. G.) Defendant cannot complain of any delays caused by his own criminal conduct, Knight v. State, 211 So. 3d 1, 13 (Fla. 2016), and it was his

> attempt to murder a witness that injected further
> complication and delay into his case. Accordingly,
> Defendant is not entitled to relief on Ground One.

Ex. K at 82-83. Petitioner appealed, but in his initial brief, he failed to present any argument with respect to this claim. See Ex. L. Therefore, the First DCA, in its written opinion, found that Petitioner specifically abandoned this claim. See Santiago v. State, 294 So. 3d 969, 970 (Fla. 1st DCA 2020) ("Although Santiago raised four issues in his postconviction motion, he appeals only the denial of claims two, three, and four. Santiago thus waived any argument on claim one by failing to address the claim in his initial brief."); see also Fla. R. App. P. 9.141(b)(3)(C) (requiring briefs be served within 30 days of service of the record if the postconviction court held an evidentiary hearing on one or more claims). As Petitioner failed to give the state court the opportunity to resolve this claim, this Court finds the claim to be unexhausted and procedurally barred. Petitioner fails to show cause to excuse the procedural default or resulting prejudice. Nor has Petitioner shown that a fundamental miscarriage of justice would result if the Court does not address the claim on the merits. Thus, Ground Two is due to be denied.

Alternatively, assuming Petitioner exhausted this claim, the Court finds it has no merit. Notably, "[a]n attorney, acting without consent from his client, may waive his client's right to a speedy trial because '[s]cheduling matters are plainly among those [decisions] for which agreement by counsel generally

controls.'" <u>Fayson v. Sec'y, Fla. Dep't of Corr.</u>, 568 F. App'x 771, 773 (11th Cir. 2014) (quoting <u>New York v. Hill</u>, 528 U.S. 110, 115 (2000)). A review of the record reflects that counsel explained his reasoning for not enforcing speedy trial and his belief that going into a trial without deposing certain witnesses was not in Petitioner's best interests. <u>See</u> Ex. K at 110. Considering the record, the Court finds that Petitioner has failed to show deficient performance or resulting prejudice. He is not entitled to federal habeas relief on Ground Two.

## C. Ground Three[2]

Petitioner argues that his counsel was ineffective for "failing to conduct a proper and timely investigation of the crime scene and the facts surrounding the case." Doc. 7 at 8. He asserts that two witnesses, a female bartender and Victor Aquilera, would have provided exculpatory testimony. <u>Id.</u> at 8-9. Respondents argue that the state court's adjudication of this claim is entitled to deference. Doc. 19 at 25-30.

Petitioner raised this claim in his Rule 3.850 proceeding. After conducting an evidentiary hearing on this issue, the state court denied the claim:

> In Ground Two, Defendant alleges counsel was ineffective for failing to investigate the crime scene and the facts of the case. Specifically, Defendant complains that counsel was deficient for failing to present eyewitnesses who would have offered testimony that contradicted the State's key witness. Defendant claims prejudice because the conflict in

---

[2] Petitioner refers to this claim as Ground Two(a). Doc. 7 at 8.

evidence would have produced a different result at trial.

In order to be effective, counsel must reasonably investigate their client's case or provide a reasonable explanation as to why a more thorough investigation was not done. Mendoza v. State, 81 So. 3d 579, 581 (Fla. 3d DCA 2012) (citing Wiggins v. Smith, 539 U.S. 510 (2003)). Failure to sufficiently impeach a key witness may constitute ineffective assistance of counsel. Bentley v. State, 867 So. 2d 515, 517 (Fla. 2d DCA 2004) ( citations omitted).

Defendant alleges that both a female bartender[] and a club patron would have provided exculpatory evidence had counsel investigated them. The bartender would have testified as to where the shots were fired, that the victim's body had been moved, and that the victim's girlfriend approached the victim from another area of the club while patrons provided first aid. The patron, Victor Aguilera would have testified that he saw the man who shot the victim, that the victim's girlfriend was not with the victim at the time of the shooting, and that Defendant did not shoot the victim.

At trial, the victim's girlfriend testified that other club goers had moved the victim to a couch after the shooting. (Ex. E at 328.) A detective testified that two shell casings were located near the body, but detectives could not determine where the shooting occurred based upon the location of the shell casings. (Ex. E at 399, 427.) The shell casings had . . . probably been kicked as club goers evacuated after the shooting, and the casings would have bounced after the shooting because the club floor had a hard surface. (Ex. E at 423.) Another detective testified that surveillance footage of the club showed that the shooting happened away from the bar area, just off camera. (Ex. E at 532.) The State entered this surveillance footage into evidence and published it to

the jury. (Ex. E at 533-37.) Additionally, Defendant called a witness who testified that he had been dancing with the victim's girlfriend prior to the shooting, and she had been drinking. (Ex. E at 720-21.) At the evidentiary hearing, Defendant testified that he learned of the bartender's existence after sentencing. The bartender spoke to his girlfriend and said she had never been called about the case. Had she been called she would have said the shooting did not happen at the bar.

Based upon the evidence presented at trial and the evidentiary hearing, the bartender's testimony would have been cumulative, so Defendant was not prejudiced by counsel's failure to investigate and call this witness. Schofield v. State, 914 So. 2d 990, 993 (Fla. 4th DCA 2005).

As for Aguilera, Defendant testified at the evidentiary hearing that he met Aguilera in the county jail. Defendant had already been sentenced, and Aguilera asked what Defendant was in for. Defendant replied that he had been accused of a death at a discotheque. Aguilera asked which one, and Defendant said Aqua. Aguilera was surprised and said "I saw everything, and you don't have anything to do with that. I saw everything when the person came from the back door." Defendant never told counsel about this conversation.

Counsel testified that he took over the case from another attorney at the Office of the Public Defender in September of 2012. The crime had been committed in February of 2009, but Defendant had not been extradited back to Florida until May of 2010. The delay between the date the crime was committed and charges being filed made investigating the case more difficult. He spoke with Defendant about the shooting and presented a defense witness based upon their conversations. He

17

had nothing in his notes about either the bartender or Mr. Aguilera.

While an attorney must conduct a reasonable investigation into his client's case, <u>Strickland</u> does not require an attorney to ascertain the identity of every witness who could provide exculpatory evidence. <u>Rhodes v. State</u>, 986 So. 2d 501, 512 (Fla. 2008). The Office of the Public Defender did not receive this case until over a year after the shooting. Counsel reviewed police reports, statements, and spoke with Defendant and his family about potential witnesses. Counsel conducted a reasonable investigation through depositions and reviewing surveillance footage of the shooting. <u>Simmons v. State</u>, 105 So. 3d 475, 494-95 (Fla. 2012). Assuming Aguilera exists, the fact that counsel did not discover him was not a result of a lack of investigation, but the practical impossibility of speaking to hundreds of unnamed club patrons over a year after the murder. Even Defendant, who was in the best position to know who was in the club that night, did not learn about Aguilera's existence until after trial and sentencing, and he never informed counsel about their conversation. Thus, counsel was not deficient.

Further, after listening to Defendant's testimony and observing his demeanor, this Court does not find his testimony to be credible. Defendant offered only hearsay as to what Aguilera said to him, <u>Mendoza v. State</u>, 87 So. 3d 644, 665 (Fla. 2011), and this Court finds it incredible that a witness who could have exonerated Defendant materialized days after sentencing. <u>See</u> <u>Sandoval v. State</u>, 225 So. 3d 962, 963 (Fla. 3d DCA 2017). Accordingly, Defendant is not entitled to relief on Ground Two[.]

18

Ex. K at 83-86. Petitioner appealed, and the First DCA per curiam affirmed his convictions and sentences in a written opinion. As to this claim, the First DCA found as follows:

> Santiago alleged in his motion that his counsel was ineffective for failing to discover and interview Victor Aguilera, a witness Santiago claims would have presented exculpatory evidence. Though he did not make the argument below, Santiago argues on appeal that this claim should have been construed as a newly discovered evidence claim because it was clear that neither Santiago nor his counsel could have discovered the witness earlier.

> But in his motion, Santiago alleged only that Aguilera would have been available had counsel conducted a proper and timely investigation. To qualify as newly discovered evidence, the asserted facts must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known them by the use of diligence. See Robinson v. State, 707 So. 2d 688, 691 (Fla. 1998) (quoting Blanco v. State, 702 So. 2d 1250, 1252 (Fla. 1997)). Santiago admitted that he was at the club during the shooting and knew that there were witnesses to the shooting. But Santiago never told his counsel about any potential witnesses because Santiago believed it was his counsel's job to investigate.

> Santiago's counsel testified at the evidentiary hearing and asserted that he was unaware of Aguilera as a potential witness. And the defense's theory was that Santiago did not commit the murder. Santiago also testified at the hearing. He claimed that he met Aguilera in the county jail after he was sentenced. After hearing testimony from Santiago and his trial counsel, the postconviction court found

> that Santiago's counsel conducted a reasonable investigation through depositions and reviewing surveillance footage of the shooting. The court also found that Santiago was not credible. Because the court's findings were supported by competent, substantial evidence, this claim was properly denied.

Santiago, 294 So. 3d at 971.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudication was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Ground Three is due to be denied.

Assuming this claim is not entitled to deference, the Court finds it has no merit. Petitioner has failed to show deficient performance or resulting prejudice. As such, Petitioner is not entitled to federal habeas relief on Ground Three.

**D. Ground Four**[3]

Petitioner asserts his trial counsel was ineffective "for failing to properly question witnesses during trial and the state court's denial is clearly unreasonable in light of the evidence presented." Doc. 7 at 10. Specifically, he

---

[3] Petitioner refers to this claim as Ground Two(b). Doc. 7 at 10.

asserts that counsel failed to "properly question Ms. Sujey Ramos [(the victim's girlfriend)] and Mrs. Judith Santiago" (Petitioner's mother). Id. at 10. Respondents contend that the state court's adjudication of this claim is entitled to deference. Doc. 19 at 30-33.

Petitioner raised this claim in his Rule 3.850 motion. After conducting an evidentiary hearing on this issue, the postconviction court denied the claim:

> In Ground Three, Defendant alleges counsel was ineffective for failing to properly impeach the victim's girlfriend. Specifically, Defendant complains that counsel should have laid the proper predicate during the witness's cross-examination in order to later impeach her with evidence that she had offered to change her testimony if Defendant paid her $10,000. Defendant claims prejudice because her credibility was a key issue at trial, and it is likely that the result of the trial would have been different had she been properly impeached.

> Counsel may be ineffective for failing to impeach the State's key witness. Bentley v. State, 867 So. 2d 515, 516 (Fla. 1st DCA 2004) (citations omitted). However, in the case at hand, counsel vigorously attempted to use the testimony of Defendant's mother in order to impeach the victim's girlfriend. (Ex. E at 768-90.) Counsel argued that this Court should either allow Defendant's mother to testify or that the victim's girlfriend should be recalled and, depending on her testimony, Defendant's mother should be able to impeach her. (Ex. E at 768-90.) After counsel proffered Defendant's mother as a witness, this Court found that the majority of her testimony would be either inadmissible or irrelevant. (Ex. E at 758-88). While counsel did not then move to recall the victim's girlfriend as a witness (to lay the predicate), this

Court's ruling made it clear that counsel would not be able to impeach the witness or attack her credibility with evidence that she had previously offered to recant for $10,000, so any further argument would have been fruitless. See Green v. State, 80 So. 2d 676, 678 (Fla. 1955) ("[Counsel] was not required to do an obviously useless thing, and to continue to object to the procedure already specifically ruled upon by the trial judge."); accord A.E. v. State, 599 So. 2d 713, 714 (Fla. 1st DCA 1992). Defendant did not appeal this issue, and a defendant may not raise an issue in a collateral proceeding when the issue should have been raised on direct appeal. E.g. Wells v. State, 598 So. 2d 259, 260-61 (Fla. 1st DCA 1992).

At the evidentiary hearing, counsel testified that he had tried to impeach the victim's girlfriend, and he wanted to bring out evidence of an injunction obtained against her by Defendant's mother. He could not remember a specific reason why he chose not to ask her about the extortion on cross-examination, but this Court ultimately refused to allow the impeachment so there was not much he could do.

After reviewing the trial transcript and counsel's testimony at the evidentiary hearing, this Court finds that counsel was not ineffective because it was this Court's ruling that prevented counsel from calling Defendant's mother to impeach the victim's girlfriend. Counsel attempted to impeach the witness and had always intended to do so. Accordingly, Defendant is not entitled to relief on Ground Three.

Ex. K at 83-86. Petitioner appealed, and the First DCA per curiam affirmed his convictions and sentences in a written opinion. As to this claim, the First DCA found as follows:

Next, Santiago argues that his counsel was ineffective for not impeaching Sujey Ramos, the victim's girlfriend who identified Santiago as the shooter, with evidence that Ramos tried to extort Santiago and his mother. Santiago contends that Ramos asked Santiago's mother for money in exchange for her changing her testimony that Santiago was the shooter. Santiago testified that his mother then obtained an injunction against Ramos. Santiago asserts that his counsel should have cross-examined Ramos about the attempted extortion.

But Santiago's claim fails because the record shows that defense counsel tried to present evidence of the extortion through the direct testimony of Santiago's mother about the injunction. But the trial court prohibited the testimony. See Spann v. State, 985 So. 2d 1059, 1067 (Fla. 2008) (holding that counsel was not deficient when he tried to challenge a witness' testimony). And Santiago failed to establish prejudice by showing that the result of the proceeding would have been different had Ramos been questioned about the extortion. The record shows that defense counsel presented evidence of the extortion attempt to the jury by introducing a recorded conversation between Santiago and an undercover officer. In the recording, Santiago told the officer that Ramos asked his mother for $10,000 to not testify against him. Because Santiago showed neither ineffectiveness of counsel nor prejudice, this claim was properly denied.

Santiago, 294 So. 3d at 971-72.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudication was not contrary to clearly established federal law, did not involve an

unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Ground Four is due to be denied.

### E. Ground Five[4]

According to Petitioner, his trial counsel was ineffective for "misadvising [him] not to testify in his defense at trial." Doc. 7 at 11. Respondents argue that the state court's adjudication of this claim is entitled to deference. Doc. 19 at 33-35.

Petitioner raised this claim in his Rule 3.850 proceeding. After conducting an evidentiary hearing on other grounds, the postconviction court denied this claim:

> In Ground Four, Defendant alleges counsel was ineffective for advising Defendant not to testify. Specifically, Defendant complains that counsel was deficient for advising Defendant that the State's case was very weak. Defendant claims prejudice because his version of events would have rebutted the State's evidence, creating a reasonable probability that the outcome of his trial would have been different.
>
> To prevail on a claim that counsel's ineffectiveness interfered with his right to testify, Defendant must demonstrate that counsel's advice to him "was deficient such that it deprived [Defendant] of the ability to choose whether to testify on his own behalf and that this deficiency prejudiced [Defendant]." Beasley v. State, 18 So. 3d 473, 495-96 (Fla. 2009) (citing United States v. Teague, 953 F.2d

---

[4] Petitioner refers to this claim as Ground Two(c). Doc. 7 at 11.

1525, 1530 (11th Cir. 1992)). This involves a two-step analysis where this Court must determine whether Defendant's waiver of his right to testify was voluntary, and, if it was, whether or not counsel's advice that Defendant not testify was reasonable. Simon v. State, 47 So. 3d 883, 885-86 (Fla. 3d DCA 2010).

First, this Court finds that Defendant knowingly and voluntarily agreed with counsel's advice that he not testify. During a thorough colloquy with Defendant, this Court informed him that he had an absolute right to testify, and Defendant, aware of this right, chose not to take the stand. (Ex. E at 790-94.) Thus, this Court must determine whether or not counsel's advice was reasonable. Id.

Defendant alleges his testimony would have provided the jury with the following information: (1) the location from where the shots were fired; (2) he did not shoot the victim; (3) he had been standing somewhere else when the shooting occurred; (4) he left the club with friends; (5) he went to a friend's apartment after leaving the club; (6) he never told undercover detectives he wanted to hire them to commit a murder; (7) he was aware of a failed relationship between his sister and the mother of the victim's girlfriend; (8) he returned to Puerto Rico because of financial problems; and (9) the multi-colored shirt police located could not be his because his was at his residence.

Based upon these allegations, counsel was not ineffective for advising Defendant that his testimony would not be necessary. Jackson v. State, 711 So. 2d 1371, 1373 n.1 (Fla. 4th DCA 1998) ("Here, Appellant alleged merely that he would have declared his innocence, rebutting the testimony of state witnesses. To be entitled to an evidentiary hearing on a claim counsel deprived the defendant of the right to testify, even where no waiver is shown to be

of record, a postconviction movant must show more." (citing Jennings v. State, 685 So. 2d 879 (Fla. 2d DCA 1996); Smith v. State, 700 So. 2d 469 (Fla. 1st DCA 1997))). His testimony would not have laid the predicate for a defense, e.g., Visger v. State, 953 So. 2d 741, 744-45 (Fla. 4th DCA 2007), nor would it have been exculpatory information only Defendant could provide. E.g., Loudermilk v. State, 106 So. 3d 959, 960 (Fla. 4th DCA 2013). Without subjecting Defendant to cross-examination, counsel was able to attack the credibility of the state's only eyewitness with inconsistent statements as well as evidence that she had demanded money from Defendant in order to not testify; he was able to detail how none of the State's forensic and investigatory witnesses presented any evidence directly linking Defendant to the crimes; and he was able to attack the credibility of Defendant's cellmate through the use of prior convictions while also showing how the taped recording of Defendant's conversation with detectives corroborated, rather than contradicted, the argument that Defendant was being railroaded by a vindictive former friend and a jailhouse snitch. (Ex. E at 844-69.) Thus, Counsel was not deficient.

Ex. K at 88-90. Petitioner brief this issue on appeal, and the First DCA per curiam affirmed his convictions and sentences in a written opinion. As to this claim, the First DCA found as follows:

Last, Santiago claims that his counsel rendered deficient performance when counsel advised him not to testify. This claim is conclusively refuted by the record.

A claim that is conclusively refuted by the record may be summarily denied by the postconviction court. See Peede v. State, 748 So. 2d 253, 257 (Fla. 1999); see Fla. R. Crim. P. 3.850(d). Here, the postconviction court attached portions of

> the record showing that the trial court conducted a thorough colloquy in which Santiago affirmed his decision not to testify. And the record shows that the trial court found that Santiago's decision was freely, voluntarily, knowingly, and intelligently given. Thus, this claim was properly denied, too.

<u>Santiago</u>, 294 So. 3d at 972.

The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudication was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Therefore, Ground Five is due to be denied.

In light of the foregoing, it is

**ORDERED**:

1.    The Amended Petition (Doc. 7) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.    If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any

motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[5]

3.      The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of September, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 9/8
c:
Omar Santiago, #J52235
Counsel of Record

---

[5] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.